# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
MULLIGAN, FEBBO, and SCHASBERGER
Appellate Military Judges

**UNITED STATES, Appellee**
v.
**Sergeant EDWARD J. MITCHELL, II**
**United States Army, Appellant**

ARMY 20170558

Headquarters, 1st Cavalry Division
Douglas K. Watkins and Rebecca K. Connally, Military Judges
Colonel Emily Schiffer, Staff Judge Advocate

For Appellant: Lieutenant Colonel Christopher D. Carrier, JA; Major Patrick G. Hoffman, JA; Captain Benjamin A. Accinelli, JA (on brief).

For Appellee: Colonel Steven P. Haight, JA; Lieutenant Colonel Eric K. Stafford, JA; Major Wayne H. Williams, JA; Captain Joshua Banister, JA (on brief).

14 November 2018

---------------------------------
SUMMARY DISPOSITION
---------------------------------

FEBBO, Judge:

Procedurally, appellant's court-martial case is unusual. Appellant's case was initiated with multiple charges in June 2015 and ended with a guilty plea over two years later in October 2017.[1] During this time, the government filed two unsuccessful appeals under Article 62, Uniform Code of Military Justice, 10 U.S.C. § 862 (2012) [hereinafter UCMJ], the appellant spent 887 days in pre-trial confinement, reached his expiration-

---

[1] A military judge sitting as a general court-martial convicted appellant, pursuant to his pleas, of one specification of stalking, five specifications of disobeying a superior commissioned officer, and one specification of obstruction of justice, in violation of Articles 92, 120a, and 134 of the UCMJ. The military judge sentenced appellant to a bad-conduct discharge and confinement for 13 months. The convening authority approved the adjudged sentence and credited appellant with 887 days for his pre-trial confinement.

term of service (ETS) date, and did not receive pay and allowances for approximately 16 months.

This case is before us for review pursuant to Article 66, UCMJ. Appellant raises two assigned errors.[2] Appellant claims on appeal that the military judge abused his discretion in denying appellant's motion for confinement credit under Article 13, UCMJ for non-payment of pay and allowances while in pre-trial confinement. The military judge found stopping appellant's pay was not punishment, but the function of a Defense Finance and Accounting Service (DFAS) policy and that agency's interpretation of its statutory authority to pay an accused whose term of service expired while in pre-trial confinement. We agree. *See Howell v. United States*, 75 M.J. 386 (C.A.A.F. 2016).

## BACKGROUND

Sergeant Mitchell was a M-1 Armor Crewman assigned to 1st Cavalry Division. He deployed to combat zones four times for a total of 46 months. In 2013, appellant married JM and supported her two children. The family moved to Fort Hood in April 2014. In November 2014, JM reported that appellant had sexually assaulted her. They separated and appellant moved out of their home. His company commander gave him a Military Protective Order (MPO) to have no contact with JM without prior approval of his chain of command. This was the lull before the storm.

Instead of obeying the no contact order, appellant began stalking JM and placed her in fear. Appellant began a month's long campaign of communicating vile and threatening text messages and phone calls to JM. He repeatedly drove by her residence, followed her in his vehicle, and tried to enter JM's residence. In response, appellant was given two additional MPOs from his company commander

---

[2] Appellant also asserts on appeal that his bad-conduct discharge should not be approved. Among the reasons in support of his argument, appellant points to the fact that his 887 days of pre-trial confinement exceeded his 13 month adjudged sentence. As he presented at sentencing, appellant also had a tragic experience in combat when he witnessed his brother's body being pulled from a tank in Iraq after the tank hit an improvised explosive device (IED). While he was in pre-trial confinement, he was not allowed to attend his mother's funeral. Appellant's maximum sentence included the possibility of a dishonorable discharge and many years of confinement. The military judge stated on the record that he fully considered appellant's extenuation and mitigation evidence before sentencing him to a bad-conduct discharge. Our review of the entire record, to include the length of pre-trial confinement as compared to the adjudged sentence, appellant's record of service and other matters presented by appellant in extenuation and mitigation (to include Rule for Courts-Martial (R.C.M.) 1105 and 1106 matters), concludes that the sentence to 13 months confinement and a punitive discharge was appropriate.

and two MPOs from his Battalion Commander. Appellant violated all five of the no-contact orders. Between November 2014 and May 2015, appellant contacted JM around 4,000 times by phone or text. The military police responded over 55 times to JM's stalking complaints against appellant.

In May 2015, after appellant's repeated stalking of JM and violations of the MPOs, appellant was placed in pre-trial confinement. While in pre-trial confinement, appellant obstructed justice by contacting his father and asking him to contact friends and family and instruct them not to cooperate with police or investigators. Charges were preferred in June 2015 and additional charges were preferred in July 2015.

In October 2015, pursuant to pre-trial motions, the military judge suppressed any evidence derived from appellant's iPhone. The military judge found appellant entering his iPhone personal identification number (PIN) violated appellant's Fifth Amendment rights against self-incrimination and to counsel.

The government filed an Article 62 appeal with this court. Over the next twenty-plus months, the ruling on the suppression motion was litigated at this court twice, returned to the trial court once for clarification, and ended with our superior court's opinion in August 2017 affirming in part the trial judge's and this court's suppression of the evidence from appellant's iPhone.[3]

After these appeals, the case was returned to the trial court. The appellant and the government negotiated a pre-trial agreement which capped confinement at time-served. As part of the agreement, the government dismissed a number of charges to include the sexual assault offenses, communicating threats, indecent broadcasting of naked images of JM, and placing an online add soliciting men to go to JM's home to engage in sexual acts.

Appellant pleaded guilty to the remaining offenses. The military judge stated on the record he was disgusted by the fact that appellant was held in pre-trial confinement for so long and not paid after he reached his ETS date. However, the military judge found that the government did not intend to punish appellant and was following DFAS policy when appellant's pay was stopped while he was in confinement after his ETS date. The military judge denied the motion for Article 13 credit.

## LAW AND DISCUSSION

Providing sentence credit for violations of Article 13, UCMJ, serves to

---

[3] *United States v. Mitchell*, 2016 CCA LEXIS 179 (A. Ct. Crim. App. 18 Mar 2016)(unpub.); *United States v. Mitchell*, 2016 CCA LEXIS 762 (A. Ct. Crim. App. 28 Aug. 2016)(unpub.); *United States v. Mitchell*, 76 M.J. 413 (C.A.A.F. 2017)

ensure that an accused is not doubly punished for an offense. "[I]f the accused has already been punished pretrial, that pretrial punishment must be credited against the sentence." *United States v. Alston*, 75 M.J. 875, 887 (Army Ct. Crim. App. 2016) (citing *United States v. Ruppel*, 49 M.J. 247, 254 (C.A.A.F. 1998)).

Normally, in reviewing claims for Article 13, UCMJ, credit where the military judge makes no finding of an intent to punish, we must review the claim de novo. *United States v. Smith*, 53 M.J. 168, 170 (C.A.A.F. 2000) ("In the absence of a factual finding relating to intent to punish, this Court will address the issue of illegal pretrial punishment de novo. . .   .").

The United States Court of Appeals for the Armed Forces (CAAF) explicitly stated that in order to find a violation of Article 13, UCMJ, "[t]he record *must* disclose an intent to punish on the part of the Government." *Howell v. United States*, 75 M.J. 386, 394 (C.A.A.F. 2016) (emphasis added). "[A] finding of [punitive] intent is a threshold requirement for finding a violation of Article 13, UCMJ." *Alston*, 75 M.J. at 885. Our superior court has rejected the view that a "punitive effect" without finding a punitive intent is sufficient to support a violation of Article 13, UCMJ. *Howell*, 75 M.J. at 393-94.

Application of the DFAS regulations furthered a legitimate government intent of ensuring pay and allowances were expended in accordance with law and DFAS regulations.[4] The DFAS laws and regulations were not applied to appellant in a punitive or improper manner. At the Article 13 motions hearing, a DFAS representative testified about appellant's pay status while in confinement. Appellant reached his ETS date on 18 June 2016. Since he was in pre-trial confinement at the time his enlistment contract expired, there was no affirmative authority for DFAS to continue to pay appellant after his ETS date.[5] This interpretation of the DFAS rules on entitlement of pay after an ETS date is a well-settled. *United States v. Fischer*, 61 M.J. 415, 418 (C.A.A.F 2005) (citing *Simoy v. United States*, 64 Fed. Appx. 745, 746 (Fed. Cir. 2003).

---

[4] Appellant argues that Title 38 of the United States Code that regulates military pay does not include prohibitions against paying service-members who are in pre-trial confinement after their ETS date. However, when dealing with expenditure of funds, government agencies require specific Congressional authority for the expenditure.

[5] The DFAS witness explained that appellant was erroneously paid around $59,000 after his ETS date. Appellant argues that he was also punished by DFAS's attempts to recoup this money.

There are two exceptions to protect soldiers. First, a soldier can receive retroactive pay if the soldier is either acquitted or the charges are dismissed. Second, a soldier's pay can be re-started if the soldier is released from pre-trial agreement and is returned to full duty status while awaiting trial. Neither of these exceptions applied to the appellant.

This court's review of the record finds no improper intent to punish appellant.[6] It is unfortunate that the combination of being in pre-trial confinement, reaching his ETS date, and multiple lengthy appeals resulted in him not being paid for approximately 16 months. However, appellant was placed in pre-trial confinement based solely on his serious and threatening misconduct towards his spouse and failure to obey no-contact orders from his commanders. Appellant's term of enlistment and ETS date were established prior to any misconduct leading to his charges. The Article 62 appeals were lengthy and complicated, but ultimately led to favorable results for appellant, a favorable pre-trial agreement, and dismissal of multiple charges.

Further proof of no intent to punish appellant is evident by his unit's repeated attempts to extend his ETS date to get him paid. However, since appellant was in pre-trial confinement, DFAS regulations did not allow for appellant's ETS date to be adjusted or allow DFAS to pay appellant.

The court finds that the government was following established regulatory guidance and did not intend to punish appellant. Therefore, he was not improperly denied Article 13 credit.

## CONCLUSION

Upon consideration of the entire record, the findings of guilty and sentence are AFFIRMED.

Senior Judge MULLIGAN and Judge SCHASBERGER concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

---

[6] At trial, appellant did not claim Article 13 credit for his physical conditions of confinement nor the unit's actions or inaction to provide logistic support to appellant.

5